UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

TIMOTHY GROSSO,                                    :

                         Plaintiff,                :   REPORT AND RECOMMENDATION
                                                       15 Civ. 8709 (AT)(GWG)
                -against-                           :

CAROLYN W. COLVIN,
                                                   :
                         Defendant.
-----------------------------------------------------------------x
GABRIEL W. GORENSTEIN, United States Magistrate Judge

        Timothy Grosso brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of the final decision of the Commissioner of Social Security denying his claim

for disability insurance benefits under the Social Security Act.  Both Grosso and the

Commissioner have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]  For

the reasons stated below, the Commissioner's motion should be denied and Grosso's motion for

remand should be granted.

I.      BACKGROUND

        A.      Grosso's Claim for Benefits and Procedural History

        Grosso filed an application for benefits on October 5, 2012, alleging disability beginning

on November 5, 2011.  See Administrative Record, filed June 30, 2016 (Docket # 19) ("R."), at

16.  The Social Security Administration ("SSA") denied his application on January 18, 2013.  Id.

Administrative Law Judge Robert Gonzalez ("ALJ") held hearings on December 20, 2013, and

_____

        [1] See Notice of Motion, filed Apr. 26, 2016 (Docket # 15); Memorandum of Law in
Support of Plaintiff's Motion for Judgment on the Pleadings, filed Apr. 26, 2016 (Docket # 16)
("Pl. Mem."); Notice of Motion, filed May 16, 2016 (Docket # 17); Memorandum of Law in
Support of Defendant's Motion for Judgment on the Pleadings and in Opposition to Plaintiff's
Motion for Judgment on the Pleadings, filed May 16, 2016 (Docket # 18) ("Comm. Mem.").

April 1, 2014, regarding Grosso's application, during which Grosso was represented by an attorney.  Id.  On July 10, 2014, the ALJ issued a decision finding that Grosso was not disabled. R. 30.  The Appeals Council denied Grosso's request for review on September 24, 2015, making the ALJ's determination the Commissioner's final decision.  See R. 1-5.  Grosso filed the instant lawsuit to review that determination on November 5, 2015.

B.      The Medical Evidence

Grosso and the Commissioner have each provided a summary of the medical evidence contained in the administrative record.  See Pl. Mem. at 3-13; Comm. Mem. at 3-16.  The Court adopts the parties' summaries, which do not conflict in any material way, as accurate and complete for purposes of the issues raised in this suit.  We discuss the portions of the medical record pertinent to the adjudication of this case in section III below.

C.      Grosso's Claim of Disability

As reflected in his application for benefits, Grosso was born in July 1972.  R. 232.  He completed three years of college and began work as a police officer at the New Rochelle Police Department in February 1994.  R. 256.  He ended his employment with the department after a work-related accident that occurred on November 5, 2011.  R. 232, 255.  Grosso alleged that the accident injured his back and that his pain was localized to that area.  R. 277.  Grosso lives in a house with his family.  R. 269.  At home, he watches television, reads, attends doctors' appointments, and rests.  R. 270.  Due to pain and discomfort, his girlfriend takes care of almost everything, including his personal care.  R. 270-72, 274.  However, he is able to prepare simple meals, drive short distances, and shop as needed.  R. 271-72.

2

D.     Hearing Evidence

At the hearing, Grosso testified that he occasionally takes care of his infant child.  R. 47-48.  Due to his pain, however, he needs to change the child's diaper on the floor and, when his pain is too severe, he needs either his girlfriend, daughter-in-law, or mother-in-law to help.  R. 47-48, 69-70.  Because of his injuries, Grosso found it necessary to take his child to a physical therapy appointment to learn methods of taking care of him.  R. 67.

For a brief period after the accident, from May 2013 to November 2013, Grosso returned to work in a limited capacity at the New Rochelle Police Department.  See R. 51-55.  During the 127 work days within this period, Grosso worked as a dispatcher for 43 days, working four-hour shifts, though he actually worked only three or three-and-a-half hours.  R. 51-52, 62.  During this period he used 63 sick days.  R. 55.  His duties included monitoring screens and answering telephones.  R. 52.  Grosso ended this temporary employment because he was unable to "crick [his] neck to hold a phone" while he typed information and dispatched officers.  R. 52-53.

Grosso had surgeries performed on both his lumbar and cervical spine in an effort to relieve his pain.  See R. 40-41.[2]  Although the surgeries have provided some relief, neither was fully effective.  R. 40-42, 115-16.  Grosso did not undergo any post-surgical physical therapy for his neck.  R. 58-59.  Following the accident, Grosso would take Ibuprofen or Tylenol "at times," but was not taking any prescription or over-the-counter pain medication because they gave him a "terrible reaction."  R. 77.

Vocational Expert Linda Vause testified that Grosso's past work with the New Rochelle Police Department qualified as either the "police officer" title, Dictionary of Occupational Titles

_____

[2] The surgery on his lumbar spine occurred in August 2012, R. 314-17, and the surgery on his cervical spine was performed on November 15, 2013, R. 537-39.

3

("DOT") number 375.263-014, which is a medium exertion level position and is considered skilled work, or the "detective" title, DOT number 375.267-010, which is a light exertion level position, and is also considered skilled work.  R. 103.  Vause was then asked about a hypothetical person with Grosso's age, education, and work history, who also had the residual functional capacity for a

> limited range of sedentary work . . . except that the person . . . can occasionally stoop, can occasionally crouch, can frequently flex, extend, and rotate the neck.  Must avoid exposure to dust, fumes, and noxious gases, can occasionally push and pull with the upper extremities, can occasionally climb and descend stairs, and must avoid kneeling and crawling

R. 104.  Vause testified that such a person could not perform Grosso's past work.  Id.  She stated, however, that there were at least four positions in the national economy that such a person could perform.  Id.

 E. The ALJ's Decision

On July 10, 2014, the ALJ ruled that Grosso had not been under a disability since November 5, 2011.  R. 30.  In his decision, the ALJ used the five-step sequential evaluation process described in the Social Security regulations for determining whether an individual is disabled.  R. 15-18; 20 C.F.R. § 416.920(a).  At the first step in the analysis, the ALJ determined that Grosso had "not engaged in substantial gainful activity since November 5, 2011, the alleged onset date."  R. 18.  Next, the ALJ determined that Grosso suffered from the following severe impairments: "lumbar spine disc herniation and spondylolisthesis, status post lumbar fusion; cervical spine disc bulges, status post cervical fusion; asthma; right knee degenerative disc disease; obesity; neuritis; umbilical hernia; and asthma."  R. 19.  Next, the ALJ found that Grosso did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

4

1.  R. 20.  After a review of the entire record, the ALJ concluded that Grosso held the residual

functional capacity ("RFC") to perform

> sedentary work as defined in 20 C.F.R. 404.1567(a) except [Grosso] can occasionally
> push and pull with his upper extremities; occasionally stoop, crouch, and climb and
> descend stairs; frequently flex, extend and rotate the neck; and must avoid kneeling and
> crawling. [Grosso] requires an opportunity to alternate between sitting and standing
> positions at will.  In addition, [he] should avoid concentrated exposure to dust, fumes and
> noxious gases.

R. 20.

The ALJ then summarized the medical evidence of record on which he relied in making

his RFC determination.  With regard to Grosso's musculoskeletal impairments, the ALJ noted

that Grosso had alleged a back condition which caused "chronic pain at his back and neck,

difficulty sleeping due to pain," and required him to seek help with some activities of daily

living.  R. 21.  The ALJ also noted that Grosso was initially treated with pain medication and

physical therapy, but that he reported continuing pain and the onset of "numbness and tingling at

the bilateral legs," as well as radiating pain in his right upper extremity.  Id.  Imaging of the

lumbar spine revealed "anterolisthesis of L4 and L5, moderately severe bilateral foraminal

stenosis at L4-5, an L5-S1 disc herniation and degenerative changes at the left facet joint at L5-

S1 with a posterior synovial cyst."  Id.  An MRI of Grosso's right knee showed, among other

things, small joint effusion and evidence of fibrosis, ventral to the patella and patella ligament.

Id.  The ALJ noted, however, that Grosso "denied any functional limitations stemming from his

bilateral knees," id., and that Dr. Cristian Brotea, Grosso's treating physician, described a

number of his impairments as "mild," with the exception of the extensive bilateral facet

arthropathy at L4-5, R. 22.  The ALJ also noted that although Grosso "exhibited diminished

range of motion at the cervical spine . . . [he] showed intact sensation and strength" during a

May 2012 exam, and continued to exhibit both full strength in all extremities and intact flexibility of the lower extremity joints, throughout Dr. Brotea's care.  Id.  Dr. Brotea found "no significant neurological deficits or signs of radiculopathy through at least February 2012."  Id.  A nerve conduction study of Grosso's lumbar spine conducted in May 2012 was discontinued because it resulted in "severe muscle spasms."  Id.  The ALJ highlighted that although Dr. Brotea initially restricted claimant only from "heavy lifting, twisting, turning, and strenuous activities," by May 2012, Dr. Brotea concluded Grosso's symptoms were disabling.  Id.

The ALJ then reviewed the records regarding Grosso's August 2012 "lumbar spine decompression and fusion surgery with implantation of hardware."  Id.  He noted that Dr. Joseph Ho, a pain management specialist, began treating Grosso after the surgery and found "some improvement in [the] lower back and leg pain with residual heaviness at his back and some numbness remaining in the right leg."  Id.  Dr. Ho treated Grosso with a sacroiliac joint and sciatic nerve block injection in September 2012, as well as bilateral L4 and L5 epidural injections in November 2012.  Id.

The ALJ then reviewed the consultative examination results of Dr. William Lathan, who examined Grosso in December 2012.  Id.  At the examination, Grosso complained of discomfort and pain in his lumbar spine at the area of his lumbar discectomy and fusion, as well as radiating pain in his lower extremities.  Id.  Dr. Lathan's physical examination revealed that Grosso could walk with a normal gait and change clothes without difficulty, but that he was unable to walk on his heels and toes or perform a squat.  R. 22-23.  Although Grosso refused to perform lumbar spine range of motion testing due to pain, Dr. Lathan noted that Grosso maintained full range of motion at the cervical spine and intact mobility at all other joints in the upper and lower extremities, as well as full motor strength and intact hand and finger dexterity.  R. 23.  Overall,

Dr. Lathan opined that Grosso had a "severe restriction for bending, lifting, pushing, pulling, squatting, standing, walking and strenuous exertion," and offered a further limitation that Grosso must avoid smoke, dust, and noxious fumes due to his history of asthma.  Id.  The ALJ determined that Dr. Lathan's opinion warranted "[s]ome weight," because it was based on direct observations of Grosso.  Id.  He noted, however, that Dr. Lathan's finding of "severe limitations" occurred "just four months post-lumbar spine surgery and the record substantiates improvement in [Grosso's] lumbar spine symptoms thereafter."  Id.  Furthermore, the ALJ found Grosso's ability to change his clothes for the examination conflicted with the degree of limitations that Dr. Lathan suggested.  Id.

The ALJ noted that Dr. Ho suggested that Grosso was "temporarily totally disabled from his past work . . . could no longer sit for prolonged period, lift anything greater than 20 pounds, and walk more than 100 yards without rest[]."  Id.  Dr. Ho also determined, among other things, that Grosso was unable to sleep longer than 60 consecutive minutes due to pain, and required help to put on his socks.  Id.  Noting the brief treatment relationship Dr. Ho shared with Grosso, the ALJ gave his opinion only "slight weight."  Id.  The ALJ noted that Dr. Ho's "suppositions are not supported by the objective findings during Dr. Ho's evaluations or the claimant's numerous independent medical examinations," and that Grosso's ability to change his clothing at his earlier consultive examination "renders Dr. Ho's opinion less compelling."  Id.

The ALJ reviewed further reports from Dr. Brotea.  The ALJ noted that while Grosso demonstrated full range of motion at his cervical spine in October 2012, by December 2012, Dr. Brotea reported cervical spine pain with radiation to his bilateral shoulders, diminished cervical spine range of motion, as well as MRI findings of disc bulge and disc herniation.  Id.  In January 2013, however, Grosso demonstrated full range of motion of his neck.  Id.  While Dr. Brotea

7

maintained that Grosso was 100% disabled from work as a police officer, Dr. Brotea suggested

that Grosso may be able to engage in light work for several hours per day.  Id.  In April 2013,

Dr. Brotea continued to report that Grosso had obtained significant relief of his lower back pain

and had begun reducing his intake of pain mediation.  R. 24.  Based on these findings, Dr. Brotea

suggested that Grosso "could lift up to 15 to 20 pounds, but should continue to avoid significant

twisting and turning activities."  Id.  Dr. Brotea's records suggest, however, that Grosso

continued to have "only limited flexibility at the cervical and lumbar spines and decreased

sensation at the right anterolateral thigh."  Id.  The ALJ noted that these findings appear to

conflict with Dr. Ho's records, which suggest only mild symptomology at the lumbar and

cervical spines.  Id.

In December 2013, however, Dr. Brotea reported a far more severe level of impairment.

Specifically, he opined that Grosso's lumbar and cervical spine impairments limited him from

lifting or carrying more than 10 pounds and from sitting, standing, or walking more than one

hour within an eight-hour workday.  Id.  In this report, Dr. Brotea suggested that Grosso suffered

from other various postural limitations, in that he "could never climb, bend, stoop, crouch, kneel,

or crawl."  Id.  The ALJ then noted that he had requested clarification from Dr. Brotea regarding

his medical training and overall treatment of Grosso.  Id.  Dr. Brotea stated that evaluating

impairments such as Grosso's was part of his medical training in his sub-speciality of spine

surgery.  Id.  Dr. Brotea further noted that although some of Grosso's limitations were inherent

with his surgeries, such as restricted motion and pain, his assessments of Grosso's level of

disability were also based on Grosso's reports of pain and his appearance during examination.

Id.

The ALJ then discussed the medical opinions from various independent medical

8

examinations, which occurred between February 2012 and September 2013.  Id.  He noted that in June 2013, Dr. Hendler,[3] an independent orthopedic examiner, found decreased cervical flexibility, reduced lumbar mobility, muscle spasms at the lumbar spine, and positive straight leg raises bilaterally.  Id.  Dr. Hendler also corroborated earlier findings of "decreased sensation at the right lateral thigh," but stated that Grosso's earlier lumbar spine surgery was "'ill-advised' since it failed to resolve [Grosso's] low[er] back pain."  Id.  Overall, Dr. Hendler found Grosso "disabled secondary to his lumbar spine impairment."  Id.  The ALJ afforded this opinion "little weight," however, because he found Dr. Hendler's clinical findings filled with "vague and conclusory statement[s] as to [Grosso's] capacity for work activity" and because he did not provide a "function-by-function assessment of basic work activity."  Id.

Dr. Jeffrey Oppenheim also examined Grosso during this period.  The ALJ noted that Dr. Oppenheim made similar findings as Dr. Hendler, including that the surgery was unwarranted, and also opined that Grosso had "no neurological disability."  R. 24-25.  Recognizing that Dr. Oppenheim had not performed a function-by-function assessment of Grosso's capabilities, the ALJ found his ultimate conclusion as to lack of neurological disability "consistent with his clinical findings," which demonstrated that Grosso's impairment was not as severe as he had reported, and undermined Dr. Brotea's earlier assessment of severe disability.  R. 25.

In July 2013, Dr. Mazella, another independent examiner, performed both a clinical exam of Grosso and reviewed his medical record.  Id.  Dr. Mazella reported that Grosso had a "normal gait and station, but was unable to heel and toe walk."  Id.  Although Dr. Mazella found limited lumbar range of motion and stiffness, as well as decreased sensation over the right lateral thigh,

---

[3] While the doctor is referred to as Dr. "Handler" in the Administrative Record, the correct spelling of his name appears to be "Hendler."  See R. 488.

he noted full motor strength of the lower extremities and intact range of motion of both the cervical spine and bilateral shoulders.  Id.  The ALJ characterized Dr. Mazella's report as concluding that Grosso "could continue to work in a restricted capacity on a full time basis, consistent with his work as a dispatcher."  Id.  The ALJ awarded Dr. Mazella's opinion "[g]reat weight," noting that it was based on his speciality in orthopedic surgery, expertise as an examining source, and consistency with the record as a whole.  Id.

The ALJ then discussed the opinions provided by Dr. Michael Miller in December 2012 and September 2013.[4]  In December 2012, Dr. Miller assessed that Grosso was "capable of engaging in full-time sedentary work," and specifically identified the light job duties of a police officer in the communication unit as sustainable.  Id.  The ALJ found it highly significant that Dr. Miller "found [Grosso] capable of even greater lifting capacity within three months of the alleged disability onset date, which was nearly one year before [Grosso] began complaining of any significant neck pain."  Id.  In September 2013, however, Dr. Miller observed "similar abnormalities as assessed by his previous examiners, except that [he] noted additional sensory loss at both thighs and both feet."  Id.  Accordingly, Dr. Miler concluded that although "cervical decompression and fusion surgery would likely further improve [Grosso's] functional capacity," in his current state, he was disabled.  Id.  In the ALJ's review of these two opinions, he granted "great weight" to Dr. Miller's December 2012 report, because Dr. Miller's clinical findings "provide strong support for a residual functional capacity to engage in a range of sedentary work."  Id.  He appeared to grant little or no weight to Dr. Miller's September 2013 opinion that

_____

[4] Although not explicitly discussed by the ALJ, Dr. Miller's initial report from February 2012 indicated that Grosso was "capable of working in a full-time capacity," with "[a] lifting restriction of 15-25 pounds."  R. 505.  He suggested that administrative or clerical work would be appropriate.  Id.

10

Grosso was "disabled," R. 497, because the ALJ viewed Dr. Miller's finding as relating exclusively to Grosso's cervical symptoms, "which were generally resolved by his subsequent cervical discectomy," R. 25.

The ALJ also reviewed the assessment that was completed "for purposes of receiving Accidental Disability Retirement in November 2013." Id. The ALJ gave this report "slight weight," because although its finding that Grosso was permanently unable to perform his past work was consistent with the medical evidence, the assessment did not provide an opinion regarding Grosso's ability to perform other work. Id. The ALJ also noted that the assessment was unclear as to whether it was completed by a medical source, which made the "finding of disability less compelling." Id.

The ALJ noted that on November 15, 2013, Dr. Brotea had performed a C6-7 discectomy with decompression and an anterior interbody arthrodesis with instrumentation to address Grosso's continued neck and arm pain. R. 26. Following the surgery, Grosso began to report "significant improvement," including reports that Grosso was no longer using pain medication and that Grosso was "doing quite well." Id.

After reviewing the record as a whole, including the many assessments provided by Dr. Brotea, the ALJ granted Dr. Brotea's various opinions "slight weight." Id. Recognizing Dr. Brotea's treatment relationship with Grosso and that he had performed both spinal surgeries, the ALJ noted that Dr. Brotea's "conflicting assessments of [Grosso's] functional capacity during this time period rely heavily on [Grosso's] subjective complaints," which the ALJ found unreliable. Id. Furthermore, the ALJ found Dr. Brotea's conclusions "not well supported by the objective findings," of the other independent consultive examiners, and noted that "two of the independent examiners felt the claimant's lumbar spine surgery was unwarranted." Id.

11

The ALJ also discussed Grosso's credibility as it related to his RFC determination.  He found Grosso's alleged limitations "at odds with the clinical findings of various independent medical examinations," and thus unreliable.  Id.  The ALJ listed a number of reasons supporting his findings regarding Grosso's credibility.

First, the ALJ noted that although Grosso alleged severe limitations in activities of daily living, he was able to dress himself at numerous appointments with his physicians and rise from a seated position and transfer to and from examination tables without difficulty.  R. 26-27.  The ALJ further noted that Grosso was able to care for his young child, though he recognized that Grosso reportedly needed to lie down on the floor with the child at times.  R. 27.  The ALJ also opined that due to "a pending lawsuit that was settled for $300,000 in September of 2013, it [was] not inconceivable that [Grosso] overstated his symptoms in order to secure this lucrative personal injury settlement."  Id.  Second, the ALJ noted that Grosso's treatment, including both cervical and lumbar fusions, had provided significant relief that would permit him to perform a range of sedentary work.  Id.  He also noted that Grosso had reported relief from pain after his cervical fusion and initial relief following his lumbar fusion, and that notwithstanding Grosso's continued complaints of back pain and neck clicking, Grosso had engaged in conservative treatment post-surgery and significantly reduced the use of pain medication.  Id.  Third, the ALJ stated that while the medical record contained various opinions from Grosso's treating and consulting physicians who found Grosso to be disabled, these opinions were "not well supported."  Id.  Fourth, the ALJ suggested the possibility, in light of Grosso's excellent work history prior to the onset date and both his personal injury settlement and current disability pension from work, that Grosso's continued unemployment was not due to medical impairments, but rather an "unwillingness to search for work within his residual functional capacity."  Id.

12

Finally, the ALJ found Grosso's period working as a dispatcher to be highly relevant.  He found that the work, although insufficient to qualify as "substantial gainful activity" under step one of the SSA analysis, "indicate[d] that [Grosso] had a greater capacity for work activity than initially alleged."  Id.

At step four of the evaluative process, the ALJ determined that Grosso was "unable to perform any past relevant work."  R. 28.  He concluded at step five, however, that in light of Grosso's age, education, work experience, RFC, and added functional limitations, he could perform positions including, as provided by the vocational expert at Grosso's April 1, 2013, hearing, a police aide, dispatcher, information clerk, and callout operator.  R. 29.  Noting that Grosso had argued that he was unable to return to work as a dispatcher, even on a part-time basis, the ALJ concluded that the "three other occupations identified by the vocational expert exist in significant numbers in the national economy."  R. 29-30.  Accordingly, the ALJ found that Grosso had not been under a disability as defined by the Act.  R. 30.

## II.   APPLICABLE LAW

A.     Scope of Judicial Review Under 42 U.S.C. §§ 405(g) and 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . .").  Substantial evidence is "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127-28; Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citation omitted).  The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

14

B.     Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord id.

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his

"impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  Id. §§ 423(d)(2)(A),

1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam) (citations omitted).

Regulations issued pursuant to the Social Security Act set forth a five-step process that

the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. § 404.1520(a)(4); see

also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity."  20

C.F.R. § 404.1520(a)(4)(I).  Second, if the claimant is not engaged in substantial gainful activity,

the Commissioner must decide if the claimant has a "severe medically determinable physical or

mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of

impairments that "significantly limits [the claimant's] physical or mental ability to do basic work

activities," id. § 404.1520(c).  Third, if the claimant's impairment is severe and "meets or

equals" one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and "meets the duration

requirement," the claimant must be found disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if the

claimant's impairment does not meet or equal one of the listed impairments, or does not meet the

duration requirement, the Commissioner must review the claimant's residual functional capacity

to determine if the claimant is able to do the work he or she has done in the past, i.e., "past

relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not

disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner

must decide if the claimant's residual functional capacity, in addition to his or her age,

education, and work experience, permit the claimant to do other work.  Id. § 404.1520(a)(4)(v).

If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The claimant

bears the burden of proof on all of these steps except the final one — that is, proving that there is

other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)

(per curiam).

C.   The "Treating Physician" Rule

In general, the ALJ must give "more weight to opinions" of a claimant's treating

physician when determining if the claimant is disabled.  See 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (the ALJ must give

"a measure of deference to the medical opinion of a claimant's treating physician") (citation

omitted).  Treating physicians "may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

An ALJ must accord "controlling weight" to a treating physician's medical opinion as to the

16

nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Id. §§ 404.1527(c)(2), 416.927(c)(2). Inversely, the opinions of a treating physician "need not be given controlling weight where they are contradicted by other substantial evidence in the record," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted), or are "internally inconsistent," Vanterpool v. Colvin, 2014 WL 1979925, at *14 (S.D.N.Y. May 15, 2014) (quoting Duncan v. Astrue, 2011 WL 1748549, at *19 (E.D.N.Y. May 6, 2011)) (further citations omitted).

If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must provide "good reasons" for the weight given to that opinion. Halloran, 362 F.3d at 32-33 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)) (internal quotation marks omitted). When assessing how much weight to give the treating source's opinion, the ALJ should consider factors set forth in the Commissioner's regulations, which include: (I) the length of the treatment relationship and the frequency of the examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion with relevant evidence, particularly medical signs and laboratory findings; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other relevant evidence. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see also Ellington v. Astrue, 641 F. Supp. 2d 322, 330-31 (S.D.N.Y. 2009) ("the ALJ should weigh the treating physician's opinion along with other evidence according to the factors" listed in 20 C.F.R. § 404.1527(c)(2)-(6)).

Generally, a "consulting physician's opinions or report should be given limited weight." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990). "This is due to the fact that consultative exams are often brief, are generally performed without benefit or review of claimant's medical history

17

and, at best, only give a glimpse of the claimant on a single day." Torres v. Bowen, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988). Such reports often "ignore or give only passing consideration to subjective symptoms without stated reasons." Id. (citing Ledoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984)). However, as part of his review of the evidence before him, an ALJ has the discretion to grant various degrees of weight to the opinion of such practitioners, which may, under the right circumstances, be greater than the weight awarded to a claimant's treating physician. See Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("opinions of nonexamining sources may "override treating sources' opinions provided they are supported by evidence in the record"); Vanterpool, 2014 WL 1979925, at *16 ("The opinions of consultative physicians may override those of a treating physician if they are supported by substantial evidence in the record.") (citing Jones v. Shalala, 900 F. Supp. 663, 669 (S.D.N.Y. 1995)).

III.   DISCUSSION

Grosso seeks reversal or remand of the ALJ's decision on the grounds that the ALJ failed to apply the correct legal standard to the opinion of Grosso's treating physician and that the ALJ's RFC determination was not supported by substantial evidence in the record. See Pl. Mem. at 15, 19.

Here, the ALJ made extensive efforts to evaluate the conflicts between Grosso's treating physician, Dr. Brotea, and the opinions of consultative examiners Dr. Michael Miller, Dr. William Lathan, Dr. John Mazella, and Dr. Jeffrey Oppenheim, regarding Grosso's residual functional capacity. R. 26. While we recognize the thoroughness of the ALJ's analysis, we find that the case must be remanded because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners. In light of our conclusion, the ALJ should be given a new opportunity to determine whether, in applying the treating

18

physician rule, the consultative examiners provide substantial evidence to support the ALJ's determination regarding Grosso's RFC analysis.

First, the ALJ granted "great weight" to Dr. Miller's December 2012 evaluation of Grosso, R. 25, which found him "capable of working in a full-time capacity," lifting 5 pounds, and performing "[s]edentary work with standing and walking as tolerated," R. 502.  In his September 2013 examination, however, Dr. Miller shifted course and opined that Grosso was "disabled."  R. 497.  Notably, the September 2013 examination was the only evaluation in which Dr. Miller examined both Grosso's cervical and lumbar spine, and, with regard to his lumbar spine exam, noted a decreased range of motion in both extension and left/right rotation. Compare R. 496 with R. 500.  In explaining his decision to award varying degrees of weight to Dr. Miller's contradictory opinions, the ALJ states only that Dr. Miller's "clinical findings" give "strong support for a residual functional capacity to engage in a range of sedentary work."  R. 25.  The clinical findings are not identified, however, and thus it is unclear if the ALJ thought Dr. Miller's September 2013 findings were inconsistent with his determination of disability, or with his earlier clinical findings.  If the ALJ intended to refer to Dr. Miller's earlier clinical findings, there is no explanation as to why the ALJ believed that Grosso's condition might not have worsened.

Additionally, the ALJ stated that "the one occasion when Dr. Miller considered the claimant disabled" — obviously referring to Dr. Miller's September 2013 opinion — "related to the claimant's cervical symptoms, which were generally resolved by his subsequent cervical discectomy."[5]  Id.  In fact, there is no indication in Dr. Miller's September 2013 report that he

---

[5] Grosso's cervical spine surgery was performed on November 15, 2013, by Dr. Brotea. R. 538-39

viewed Grosso as being disabled exclusively based on his finding of "cervical symptoms."  Dr. Miller's report specifically refers to Grosso's complaints that his "lower back is painful and stiff," that he "still has pain and stiffness" after his back surgery, and that he "has numbness in the lateral right thigh, [and] both feet."  R. 495-96.  Dr. Miller also refers to Grosso as being: "Status post decompression and fusion L4-S1."  R. 497.  These statements made clear that Dr. Miller was not suggesting that his finding of "disability" related exclusively to cervical symptoms.  It was thus incorrect for the ALJ to assume otherwise.[6]

The ALJ also incorrectly gave "[g]reat weight" to Dr. Mazella's opinion regarding Grosso's RFC.  R. 25.  Dr. Mazella examined Grosso on July 9, 2013, prior to his cervical spine surgery.  R. 460-66.  Dr. Mazella reviewed Grosso's medical history and performed a physical examination of Grosso's lumbar spine, cervical spine, and shoulders.  Id.  Dr. Mazella noted that although Grosso displayed limited range of motion in forward flexion, right and left lateral bending, and extension in the lumbar spine, he did not display such limitations in the cervical spine or shoulders.  R. 464-65.  Dr. Mazella did not, however, give any analysis of Grosso's functional capacity.  Thus, we do not understand why the ALJ would have stated that Dr. Mazella gave a "detailed assessment of the claimant's residual capacity for work activity."  R. 25.  For example, Dr. Mazella gave no opinion as to Grosso's ability to maintain a standing or sitting position for extended periods — a critical issue in determining Grosso's RFC.  Dr.

---

[6] Additionally, with respect to the ALJ's assertion that Grosso's cervical symptoms had been "generally resolved by [Grosso's] subsequent cervical discectomy," R. 25, it is unclear what evidence supports this assertion.  Indeed, it is directly contradicted by the opinion of Grosso's treating physician, Dr. Brotea.  See, e.g., R. 515-16 (Dr. Brotea's December 12, 2013, questionnaire describes severe and restrictive limitations); R. 545 (Dr. Brotea notes improvement in neck pain, but significantly limited range of motion with flexion and extension one month after his surgery).

Mazella stated only that Grosso "has not recovered sufficiently to return to full duty status . . . [but] apparently is working on a restricted capacity and is capable of continuing in that regard on a full-time basis."  R. 465.  The word "apparently" modified the statement that Grosso was capable of working in a "restricted capacity."  For these reasons, it is unclear what Dr. Mazella believed to be the nature of Grosso's "restricted capacity" job requirements in terms of standing, sitting, or other requirements, and even whether he was actually opining that Grosso could engage in such work.

Because of the above errors in the weight accorded the opinions of Dr. Miller and Dr. Mazella, this case must be remanded to allow the ALJ to appropriately consider the opinions of these two consultative examiners and to accord them proper weight in the ALJ's application of the treating physician rule.  See, e.g., Lopez v. Colvin, 2014 WL 5410299, at *15 (D.R.I. Oct. 22, 2014) ("[w]hen [a treating physician's] opinion is rejected based on a fundamental error . . . even if other appropriate reasons are given, it is impossible for the Court to determine how much the error corrupted the ALJ's determination to ascribe a certain weight to the opinion") (collecting cases); accord Hanes v. Comm'r of Soc. Sec., 2012 WL 4060759, at *13-14 (E.D.N.Y. Sept. 14, 2012) (remanding where ALJ made several errors in his recitation of the facts regarding the frequency of claimant's treatment by a physician, noting that "the Court is unable to conclude that the overlooked information would not materially impact the ALJ's decision and, if in fact the ALJ reaches the same conclusion, the ALJ will need to address this information in applying the . . . treating physician [rule]").  We express no view on the ultimate result.  On remand, the ALJ is free to take any further action appropriate to develop the record — including but not limited to efforts to contact the consultative examiners to clarify or expand their opinions.

IV.    CONCLUSION

The Commissioner's motion for judgment on the pleadings (Docket # 17) should be denied and Grosso's motion for judgment on the pleadings (Docket # 15) should be granted. The case should be remanded for further proceedings consistent with this Report and Recommendation.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Analisa Torres at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Torres. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: September 14, 2016
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

22